UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
In re: Vested Cellutions, LLC

PENSION BENEFIT GUARANTY
CORPORATION,

                            **REPORT AND
RECOMMENDATION**

            Petitioner,          CV 24–6047 (LDH)(AYS)

       -against-

VESTED CELLUTIONS, LLC
as plan administrator of the Vested
Cellutions, LLC Defined Benefit Plan,

             Respondent.
----------------------------------------------------X
**SHIELDS, Magistrate Judge,**

Petitioner Pension Benefit Guaranty Corporation ("PBGC" or "Petitioner") brings this action against respondent Vested Cellutions, LLC, as plan administrator of the Vested Cellutions, LLC defined Benefit Plan ("Vested" or "Respondent") under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301–1461 seeking to enforce an administrative subpoena, pursuant to 29 U.S.C. §§ 1303. (See generally Petition ("Pet."), Docket Entry ("DE") [1].) PBGC seeks an order (1) pursuant to Rule 55 of the Federal Rules of Civil Procedure for default judgment against Vested; (2) directing Vested to appear, through a duly authorized representative, before the Court, to show cause as to why the Court should not issue a subsequent subpoena order directing Vested to fully comply with the Subpoena; and (3) upon Vested's failure to appear and show cause, directing Vested to produce any and all documents and information responsive to the Subpoena. (Affidavit in Support of

1

Motion for Default Judgment ("Aff."), DE [12-9], at ¶ 26.). PBGC is not seeking any damages or legal fees from Vested. (Id.)

For the reasons below, this Court respectfully recommends that Petitioner's motion for default judgment be granted in its entirety.

<u>BACKGROUND</u>

I.      <u>Facts</u>

        A.      <u>The Petition</u>

The pertinent facts are drawn from the uncontested allegations in the Petition, as well as documents incorporated by reference, and are taken as true for the purposes of deciding this motion. See <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.</u>, 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment).

PBGC is a "wholly owned United States government corporation established under 29 U.S.C. § 1302(a) to administer pension plan termination insurance program created by Title IV of ERISA." (Pet. ¶ 1.) When an underfunded pension [p]lan terminates, PBGC provides the timely and uninterrupted payment of pension benefits to plan participants and their beneficiaries. (Id. ¶ 5.)

Vested, is a New York domestic limited liability company formed in 2011 and located in Syosset, New York with a service of process and point of contact address listed in the online business entity database for the New York Department of State, Division of Corporations as 5 Rodeo Drive, Syosset, New York 11791 (the "Service Address"). (Pet. ¶¶ 2, 14.) Kevin Mannix ("Mannix") is the President and owner of Vested. (Id. ¶¶ 14, 20.)

In 2013, Vested established the Vested Cellutions, LLC Defined Benefit Plan ("Pension Plan" or "Plan"). (Pet. ¶ 15.) Vested is also the sponsor and plan administrator of the Pension Plan which is a tax-qualified, defined benefit pension plan covered under Title IV of ERISA within the meaning of 29 U.S.C. §§ 1002(16), 1301(a)(1). (Id. ¶¶ 15-16.)

In April 2023, PGBC's review of the Plan's Form 5500 for the 2020 plan year revealed that Vested had failed to make statutorily required minimum funding contributions due to the Pension Plan for the 2020 plan year. (Pet. ¶ 17.) Vested had not properly notified PBGC by filing a Form 10 indicating that it had failed to make statutorily required minimum contributions to the Pension Plan for the 2020 plan year. (Id. ¶17.) Additionally, PBGC has since learned that Vested has failed to make multiple statutorily required premium filings and payments. (Id. ¶ 18.) Based on its discoveries, PBGC commenced an investigation into the Pension Plan pursuant to 29. U.S.C. § 1303(a). (Id. ¶ 19.)

On April 25, 2023, and again on May 9, 2023, PGBC sent an email to the email address that was active and associated with Mannix. (Pet. ¶ 20.) In the email, PBGC requested an explanation for the missed contributions for the 2020 plan year and Vested's failure to file Form 5500 for the 2021 plan year. (Id. ¶ 20.) Mannix did not reply to either email. (Id. ¶ 20.) Following Mannix's failure to reply, PBGC requested various information and documents from Vested in a letter dated May 10, 2023 (the "First Information Request") directed to Mannix's attention. (Id. ¶ 21.) It was delivered via FedEx to the Service Address on May 15, 2023, with a requested response deadline of seven days from the date of the letter. (Id. ¶ 21.) PBGC received no response to the First Information Request. (Id. ¶ 21.)

On July 27, 2023, PBGC sent another email to Mannix. (Pet. ¶ 22.) A copy of the First Information Request was attached. (Id. ¶ 22.) On this occasion, PBGC received an automated response that the email was undeliverable. (Id. ¶ 22.)

On November 2, 2023, PBGC sent another email to Mannix containing an information request (the "Second Information request") with a requested response deadline of November 21, 2023. (Pet. ¶ 23.) The Second Information request also indicated that, if Vested failed to respond, PBGC might issue an administrative subpoena. (Id. ¶ 23.) Again, PBGC received an automated response that the email was undeliverable. (Id. ¶ 23.)

Also on November 2, 2023, PBGC sent an email to David Montalvo ("Montalvo"), a signatory on the Pension Plan's submitted Forms 5500 for plan years 2013 through 2020, but with no clear relation to Vested. (Pet. ¶ 24.) PBGC received no response from Montalvo. (Id. ¶ 22.)

On November 27, 2023, PBGC sent a copy of the Second Information request via UPS to Vested, Attn: Mr. Kevin Mannix, at the Service Address, with a response deadline of December 18, 2023. (Pet. ¶ 25.) It was delivered on November 28, 2023. (Id. ¶ 25.) PBGC again received no response. (Id. ¶ 25.)

Following Vested's repeated failures to produce the information and documents that PBGC requested, on March 25, 2024, PBGC issued an administrative subpoena ("Subpoena") to Vested pursuant to 29 U.S.C. § 1303(b). (Pet. ¶ 26.) The Subpoena required production of various documents and information on or before April 15, 2024. (Id. ¶ 26.) A process server, engaged by PBGC, personally served the Subpoena on Mannix as a representative of Vested at the Service Address on April 1, 2024. (Id. ¶ 27.) Respondent, to date, has failed to respond to the Subpoena. (Id. ¶ 28.)

4

In a last attempt to obtain the information and documents needed for its investigation, PBGC issued a final waring letter to Vested at the Service Address, Attn: Kevin Mannix, via UPS on April 30, 2024. (Pet. ¶ 29.) The final warning letter required production of the previously subpoenaed documents and information on or before May 14, 2024. (Id. ¶ 29.) PBGC further indicated that, if Vested did not comply with the subpoena by that date, PBGC may initiate enforcement action in this court. (Id. ¶ 29.)

To date, PBGC has not received any response to its communications from Vested or any other party. (Pet. ¶ 30.)

B.    Procedural History

Petitioner commenced this action on August 28, 2024. (See Pet.) On September 14, 2023. Petitioner properly served the summons and petition on Respondent by personally serving Mannix at the Service Address. (DE [8], Affidavit of Service.) When Respondent failed to respond to the Petition, Petitioner requested, and the Clerk of Court entered a certificate of Respondent's default pursuant to Federal Rule of Civil Procedure 55(a) on March 3, 2025. (DE [10], Request for Certificate of Default on 10/30/2024; DE [11], Entry of Default.) On December 20, 2024, Petitioner moved for entry of a default judgment pursuant to Federal Rule of Civil Procedure 55(b). (DE [12], Motion for Default Judgment ("Mot").) Petitioner served Respondent as required by Local Civil Rule 55.2(c). (DE [12-11], Certificate of Service.) On October 1, 2025, the motion was referred to the undersigned for a report and recommendation. (See Order Referring Motion dated 10/01/2025.)

DISCUSSION

I.    Entry of Default

5

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. See Shariff v. Beach 90th St. Realty Corp., No. 11-CV2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. Fed. R. Civ. P. 55(b)(2).

The Clerk entered a default against Respondent on November 1, 2024. (DE [11].) The Court first considers whether Petitioner has submitted sufficient facts for the Court to find that Respondent's conduct warrants entry of default judgment.

In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993); Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 170-71 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Mason Tenders Dist. Council v. Duce Constr. Corp., No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, the failure by Respondent to respond to the Petition demonstrates the default was willful. See, e.g., Indymac Bank v. Nat'l Settlement Agency, Inc., No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding the defendants' non-appearance and failure to respond "indicate willful conduct" in the context of a default judgment). Respondent had

6

sufficient notice of the present litigation because it was properly served with a summons and Petition, which were left with Vested's designated point of contact as well as President and owner, Mannix, on September 14, 2024. (DE [8].) The motion for default judgment and supporting papers were also served via mail. (DE [12-11].)

Notwithstanding this notice and service, Respondent did not respond to the Petition, did not appear, and has not in any way attempted to defend itself before this Court, thus constituting willfulness in the context of default judgment. See, e.g., Sola Franchise Corp. v. Solo Salon Studios Inc., No. 14-CV-946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) ("Defendant has not responded to Plaintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the Court in any way. Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

Second, the Court cannot conclude there is any meritorious defense to the allegations because Respondent did not appear and did not assert or present evidence of any defense. "[W]here a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment. If a defendant presents no defense to the court, the allegations in the complaint are deemed admitted." Id. (quotations and citations omitted); see, e.g., Indymac Bank, 2007 WL 4468652, at *1 ("[T]he Court is unable to determine whether ... defendants have a meritorious defense to Plaintiff's allegations because they have presented no such defense to the Court.").

Third, Petitioner would be prejudiced if the motion for default judgment were denied, "as there are no additional steps available to secure relief in this Court." Bridge Oil Ltd. v. Emerald

Reefer Lines, LLC, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), report and recommendation adopted, Dkt. No. 18 (Jan. 26, 2009); see also Sola Franchise Corp., 2015 WL 1299259, at *15 (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims").

As a result, all three factors establish grounds for entry of a default judgment. The Court now turns to the damages sought and other relief to be awarded in such a judgment.

II.     Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d. Cir. 1992); Morales v. B&M Gen. Renovation Inc., No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), report and recommendation adopted, 2016 WL 1258482 (Mar. 29, 2016). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." LaBarbera v. ASTC Labs. Inc., 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotations omitted).

Based on the undisputed allegations in the Petition, and construing them as true, the Court finds that Petitioner has invoked proper aid from the District Court pursuant to ERISA.

PBGC is a wholly owned United States Government corporation established under 29 U.S.C. § 1302(a) to administer the pension plan termination insurance program created by Title IV of ERISA. Congress established PBGC to: (1) encourage the continuation and maintenance of voluntary private pension plans for the benefit of their participants; (2) provide for the timely and

8

uninterrupted payment of pension benefits to participants and beneficiaries under plans covered by Tittle IV of ERISA; and (3) maintain premiums at the lowest level possible (collectively, "Statutory Mission"). 29 U.S.C. § 1302(a).

To carry out the second prong of its Statutory Mission, PBGC guarantees, subject to statutory limitations, the benefits earned by participants in pension plans covered by Title IV of ERISA. For example, when a Title IV-covered pension plan terminates without sufficient assets to pay benefits, PBGC becomes the plan's trustee under ERISA, takes hold of the plan's assets, supplements such assets with the agency's insurance funds (if necessary), and pays to participants and their beneficiaries their pension benefits under the plan, subject to statutory limitations. See 29 U.S.C. §§ 1321-1322, 1342, 1361. PBGC has the discretion to terminate pension plans under certain circumstances, such as the pension plan's failure to satisfy statutory minimum funding requirements or the plan's inability to pay benefits when due because of abandonment by the employer. See 29 U.S.C. § 1342(a).

Generally, a pension plan is covered by PBGC's guaranty program under Title IV of ERISA if it is a defined benefit pension plan that has met the tax qualification requirements of Internal Revenue Code ("IRC") section 401(a) or has been determined by the Secretary of Treasury to be a plan described in IRC § 401(a). 29 U.S.C. §§ 1002(2), 35, 1321(a); see also 26 U.S.C. § 401(a). Tax-qualified pension plans must, among other things, satisfy statutory minimum funding standards and must be maintained for the exclusive benefit of plan participants and their beneficiaries. See 26 U.S.C. §§ 401(a), 412, 430; see also 29 U.S.C. §§ 1104(a), 1082, 1083. Such pension plans must also file with the Department of Labor annual returns—i.e., Forms 5500. See 26 U.S.C. § 6058; see also 29 U.S.C. § 1024. Additionally, pension plans covered by the PBGC's guaranty program under Title IV of ERISA must, among other things, (1)

report to PBGC, by filing a Form 10, upon the occurrence of certain events, such as failure to

satisfy minimum funding standards, and (2) submit annual premium filings and pay premiums to

PBGC. See 29 U.S.C. §§ 1306, 1307, 1343(a), (c)(5); 29 C.F.R. §§ 4007.3, 4043.3, 4043.5,

4043.25.

ERISA provides PBGC with a variety of tools to achieve its Statutory Mission, including

the authority to conduct investigations as it deems necessary, such as when a pension plan fails to

report to PBGC a failure to satisfy the statutory minimum funding standards, file the Forms

5500, or pay premiums to PBGC. See 29 U.S.C. § 1303(a). For the purposes of any such

investigation, the PBGC Director or his designee may "subp[o]ena witnesses, compel their

attendance, take evidence, and require the production of any books, papers . . . or other records

which [PBGC] deems relevant[.]" 29 U.S.C. § 1303(b). ERISA further provides that:

> [i]n the case of . . . refusal to obey a subp[o]ena . . . [PBGC] may invoke the aid
> of any court of the United States within the jurisdiction of which investigation or
> proceeding is carried on, or where such person resides or carries on business, in
> requiring the attendance and testimony of witnesses and the production of books,
> papers . . . and other records.  The court may issue an order requiring such person
> to appear before [PBGC], or member or officer designated by [PBGC], and to
> produce records or to give testimony related to the matter under investigation or
> in question.  Any failure to obey such order of the court may be punished by the
> court as a contempt thereof.

29 U.S.C. § 1303(c). Neither ERISA nor PBGC regulations require a specific means of service

for administrative subpoenas issued by PBGC.

In Pension Benefit Guar. Corp. v. Trees R'Us, Inc., the Court recognized PBGC's

subpoena authority. No. 23-MC-101 (JS)(AYS) (E.D.N.Y. Apr. 26, 2023), DE [13] ("Compliance

Order"); Order Finding Respondent in Contempt of Court, Trees, No. 23-MC-101 (JS)(AYS),

2023 WL 4564873 (E.D.N.Y. July 17, 2023).  In Trees, the court emphasized in its Compliance

Order that, pursuant to § 1303(c), "failure to comply with [the compliance order and the

10

subpoena] may be punished as a contempt of this Court[.]" Compliance Order, <u>Trees</u>, No. 23-MC-101 (JS)(AYS).

Here, PBGC opened its investigation into the Pension Plan after Vested failed to comply with multiple statutory and regulatory obligations to the Pension Plan. PBGC initially attempted to request documents and information from Vested through its representatives via email and mail, but these repeated efforts were unsuccessful. Ultimately, PBGC issued the Subpoena.

To date, Vested has not complied with the Subpoena nor contacted PBGC regarding the subpoena or the instant litigation. As the documents and information requested in the Subpoena are vital to PBGC's understanding of the status of the Pension Plan and whether it needs to be terminated for the benefit of the participants, PBGC's petition to the Court to enforce the subpoena is statutorily sound. Accordingly, Petitioner has sufficiently alleged facts establishing that PBGC was authorized to seek the Court's assistance in enforcing the Subpoena after Vested failed to comply with it.

CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Petitioner's motion for default judgment, found at docket entry No. 12 herein, be granted in its entirety. Should the District Court adopt this Court's recommendation, it is further respectfully recommended that the District Court direct Vested to show cause as to why the Court should not issue a subsequent order directing Vested to fully comply with the Subpoena, and that a failure of Vested to appear, may be punished as a contempt of this Court.

OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Further, Petitioner's counsel is directed to serve a copy of this Report and Recommendation by

11

overnight mail and first-class mail to Respondent at their last known address and to file proof of service on ECF by March 3, 2026.   Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days may preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York
   February 28, 2026

         /s/ Anne Y. Shields
         Anne Y. Shields
         United States Magistrate Judge